## STATE v. McMURREY REFINING CO.
### No. 9455.

Court of Civil Appeals of Texas. Austin.

Oct. 11, 1944.

Grover Sellers, Atty. Gen., and W. Pirtle Watts, and Geo. W. Barcus, Asst. Attys. Gen., for appellant.

Dan Moody, of Austin, for appellee.

McCLENDON, Chief Justice.

Suit by the State, brought under Art. 6066a, Sec. 10(a), Vernon's Ann.Civ.St., to condemn as a nuisance and confiscate to the State, 7,000 barrels of condensates or distillates (alleged products of crude petroleum oil), on the ground that it had been unlawfully produced in violation of certain statutes of the State and rules of the Railroad Commission promulgated thereunder, relating to the conservation of oil and gas, natural resources of the State. The product was in three tanks, located on a lease in Lavaca County, owned and operated by the Refining Co. (McMurrey Refining Company), and had been extracted by the Refining Company in the drilling (at a cost of about $85,000) and attempted completion of an 8,500-foot oil well on the lease, which was in wildcat territory, 8 miles distant from any proven oil or gas field. The trial was to the court (the jury having been excused by agreement of the parties) and the judgment denied recovery. The State has appealed. No findings of fact or conclusions of law were made or requested, and the only issue in the case is whether the evidence, viewed most strongly in favor of the defendant, was sufficient to support the judgment.

While the petition alleged the violation of several statutes and rules of the Commission, the State has briefed the case upon the sole contention of a violation of Art. 6008, Sec. 3 (a), Vernon's Ann.Civ. St. It will not be necessary, therefore, to advert to the other statutes and rules named in the petition.

Art. 6008 relates to "Production and use of natural gas." Sec. 3 declares unlawful and prohibits the production, etc., of natural gas under conditions constituting waste, which it defines as including (inter alia):

"(a) The operation of any oil well, or wells with an inefficient gas-oil ratio."

We have reached the conclusion that the evidence will support a finding that the well was never completed nor put in operation as a producing oil well and that consequently there was no "operation of any oil well," nor "production" within the meaning of Art. 6008, Sec. 3 (a). The

factual situation upon which we rest this conclusion may be briefly stated, as follows:

October 14, 1940, the Refining Co. filed with the Commission on the prescribed form its "Notice of Intention to Drill," giving therein the various required data, which included the proposed depth as 8,650 feet. July 9, 1941, it filed with the Commission the prescribed "Well Record" form, which gave the log of the well with 8,523 feet total depth and stated: "Drilling Commenced October 12, 1940. Drilling Completed January 30, 1941." This latter date should probably be January 3, 1941; but that is not material. In August and September, 1941, it filed with the Commission reports known as "Form GO–1," entitled "Producers Report of Condensate and/or Crude Oil Produced from Gas Wells," covering the months of January to August, 1941, inclusive. These reports called for the following, among other, data: Column (2) "Oil or Condensate Produced (barrels)", Column (4) "Total Gas Produced (M. C. F.)," and "Remarks." Under Column (2) these reports gave: For January, 400; for February, March and April, none; for May, 1,000; for June, 1,000; for July, 3,800; and for August, 800. Under Column (4) the January report noted, "No Meter." In the other reports this column was left blank. Under the heading "Remarks," the reports noted: For January, "Condensate produced while well was being completed"; for May, "Condensate produced while cleaning and testing"; for June, "Condensate produced while testing and cleaning"; for July, "This production made while testing and cleaning"; and for August, "Condensate produced while testing."

The well was sealed by the Commission in August, 1941, and has so remained ever since. The tanks were gauged by a Commission Deputy Supervisor, March 15, 1944, and showed an aggregate of 5,775.89 barrels. The loss was readily explainable by evaporation in the three intervening years. The State concedes in its brief that the evidence was sufficient to classify the well either as a gas or oil well. Art. 6008, Sec. 3 (a), relates only to oil wells.

The evidence showed that the well was drilled entirely through the Wilcox formation and into a stratum of salt water. It was then cemented at the bottom, and various efforts were made to complete it as an oil well between the date drilling was completed (January 3 or 30, 1941) and August, 1941. The well was in wildcat territory, and due to weather conditions (excessive rains) from February on, it was practically inaccessible from the outside, and these efforts at completion were frequently interrupted and delayed, and practically entirely prevented during the months of February, March and April. The difficulties were enhanced by the great depth of the well, the very high pressure (3,400 lbs. to the square inch at the well head), and delays and difficulties in getting equipment and material. It is not necessary to detail these operations. They are fairly and accurately epitomized in appellee's brief, pages 3 to 6, which we approve. Very briefly, it may be stated, that they consisted in perforating the casing at successive levels in the oil bearing sand by a "shooting" process, testing the product for salt water, and then shutting off the flow through a "squeeze job" process. This process was begun at a few feet above the cemented bottom of the well, and was repeated as each prior test showed a large percentage of salt water. The product in issue was extracted in the course of these several operations, and instead of being turned loose on the ground, was collected in the three tanks; a large part of it being distillates, produced by running the gas which escaped in the course of the process through a separator.

The contention of the State is that these reports show that the well was completed and put in operation in January, 1940, and the well was operated thereafter, and the product produced in violation of Art. 6008, Sec. 3 (a), in that it did not have "an inefficient gas-oil ratio." Even taken by themselves we do not think these reports are susceptible of this construction. The statement in the "Well Record" report is not that the well was completed, but that drilling was completed. And the statements under "Remarks" in January, May, June, July and August "Form GO–1" reports clearly show that the reported "production" was in the course of completing, cleaning, and/or testing the well. So much for the reports standing alone. But aside from the reports the evidence (and there was not even a conflict in this regard) showed that while the drilling to the stated depth was completed, the well was never completed as an oil well, and was never put in production as such.

The evidence amply supports the trial court's judgment, and it is affirmed.

Affirmed.